FILED

MAR 0 5 2018

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
           DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

A18CV0197 LY

ELEISA K. JORDAN
  Plaintiff/Petitioner,

v.

U.S. BANK HOME MORTGAGE,
U.S. BANK, N.A.,**MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.**
**MERS**CORP HOLDINGS, INC., CMC
HOME LENDING, **AQUA FINANCE**, U.S.
DEPARTMENT OF HOUSING AND URBAN
DEVELOPMENT, (**HUD**), FEDERAL
HOUSING ADMINISTRATION (**FHA**) and
"Unknown Owners".

  Defendants/Respondents.

Case Number: _____
Honorable Judge _____

**Subject Premises:**
2005 Santa Barbara Court,
Round Rock, Texas 78665

-CIVIL ACTION-
PETITION FOR QUIET TITLE
DECLARATORY RELIEF;
EMERGENCY RESTRAINING ORDER
**JURY DEMAND**

## VERIFIED PETITION FOR DECLARATORY RELIEF TO QUIET TITLE; AND MOTION FOR EMERGENCY TEMPORARY RESTRAINING ORDER AND IN SUPPORT THEREOF

NOW COMES the Plaintiff-Petitioner Elisa K. Jordan, Pro Se, **(hereinafter referenced as "Plaintiff" and/or "Petitioner")** who meritoriously brings forth her cause of action and Petitions for Declaratory Relief to Quiet Title on subject premises against all named "Defendants" and further seeks an Emergency Restraining Order for Stay of Enforcement on a foreclosure sale of subject premises set for March 6, 2018 on courthouse steps in Williamson, County, Texas. Plaintiff seeks to remove all cloud on Plaintiff-Petitioner's Title, and pursuant The Quiet Title Act, 28 U.S.C. §2409a, seeks to remove cloud made by the United Statue upon subject premises, and as grounds therefore would state as follows:

### NATURE OF CLAIM

1.  Plaintiff brings this action to quiet title on subject premises and seeks relief for the federal (and state) violations committed in the acts, inactions, errors and omissions causing cloud over Plaintiff's/Petitioners real property. Plaintiff does meritoriously seek relief for damages and injuries suffered by the Plaintiff as a result of Defendants misdeeds and unlawful attempts to adversely possess Petitioners sole primary residence.

## PARTIES TO ALL CLAIMS

2. That **Plaintiff-Petitioner**, Eleisa K. Jordan, is a citizen of the State of Texas, who resides in the County of Williamson.

3. That Defendant **US BANK HOME MORTGAGE** provides mortgage services in the United States. The company is based in Minneapolis, Minnesota. It has locations in Cleveland, Ohio; and Owensboro and Bowling Green, Kentucky, as well as satellite centers in Little Rock, Arkansas; Milwaukee, Wisconsin; and Minneapolis, Minnesota. U.S. Bank Home Mortgage operates as a subsidiary of a billion dollar global banking entity, U.S. Bancorp. It also holds a base of operations at 17500 Rockside Road in Bedford Ohio and mailing of correspondence regarding subject premises to a P.O. Box in Eagen, Minnesota.

4. That Defendant **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. MERSCORP HOLDINGS, INC, known as MERS,** is a wholly-owned subsidiary of MERSCORP Holdings, and its sole purpose is to track land records for loans registered on the **MERS®** System. Most importantly, there exists thousands of Quiet Title actions and unlawful foreclosure causes against this organization within countless cities and states of the United States territories.

5. That Defendant **CMC HOME LENDING**, according to information and belief, is formerly known as Cornerstone Mortgage Company, once liquidated, but now operating in Texas as CMC LENDING, under NMLS 287979 and is a mortgage loan originator.

6. That Defendant **AQUA FINANCE** is a small to mid level home improvement contractor operating in Texas, located at 1 Corporate Drive Wausau, WI 54401

7. Aqua Finance further asserts in their UCC Financing Statements submitted to the Internal Revenue Service (IRS) and the Securities Exchange Commission (SEC) against the Petitioner in 2013 that they are affiliated with and/or also known as Corporation Service Corporation situated at 801 Adlai Stevenson Drive in Springfield Illinois, under a file number 74959043 – 365000.

8. That Defendant U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, also known as **HUD**, is a Cabinet department in the Executive branch of the United States federal government. With few exceptions, all powers and functions of the Department of Housing and Urban Development are vested in the Secretary. Unlike the heads of private organizations, many of the duties and requirements that the Secretary within HUD must fulfill are dictated by strict laws. The Secretary of HUD has power over the organization of the Department subject to certain legislative restrictions. HUD's Secretary, and it's actions, are established by statute

known as (the HUD Act), 42 U.S.C. 3533. The Office of Federal Housing Enterprise Oversight was established in the Department under Section 1311 of Title XIII of the Housing and Community Development Act of 1992 Pub. L. 102-550, enacted October 28, 1992 (HCD Act of 1992 to oversee HUD actions and ensure that it is operating in a safe and sound manner. Under the HCD Act of 1992, the Office is headed by a Director who is authorized to take various actions including issuing regulations, conducting examinations and taking enforcement actions without the review or approval of the Secretary of HUD. Finally HUD touts on it's website that.. "it's mission is to create strong, sustainable, inclusive communities and quality affordable homes for all."

9. That Defendant, The Federal Housing Administration is generally known as "**FHA**". Congress created the Federal Housing Administration (FHA) in 1934 and thereafter it became a part of the Department of Housing and Urban Development's (HUD) Office of Housing in 1965 which provides mortgage insurance on loans made by FHA-approved lenders throughout the United States and its territories. FHA insures mortgages on single family and multifamily homes including manufactured homes and hospitals. It is the largest insurer of mortgages in the world, insuring over 47.5 million properties since its inception in 1934.

10. That the said property, subject to HUD/FHA loan guidelines, is legally described as:

> LOT 27, BLOCK J, OF PALOMA LAKE SECTION 3A, A SUBDIVISION IN WILLIAMSON COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT, OF RECORD IN DOCUMENT NUMBER 2011059844, OF WILLIAMSON COUNTY, TEXAS., AS CORRECTED BY AFFIDAVIT RECORDED UNDER DOCUMENT NUMBER 2012048688, OF THE OFFICIAL PUBLIC RECORDS OF WILLIAMSON COUNTY, TEXAS.

and also known as

**2005 SANTA BARBARA COURT, ROUND ROCK, TEXAS 78665**
[Property Address]

11. That hereinafter, said address and legal description as well as all improvements thereon shall be known and referred to as Plaintiff/Petitioners' real property, sole primary residence and subject premises.

## JURISDICTION AND VENUE

12. That this Court confers jurisdiction over this matter pursuant, among others, 28 U.S.C. §1332 for reasons set forth below.

13. That Plaintiff-Petitioners' real property is located in Williamson County, Texas, and that the territorial boundaries of this District Court does embrace this County.

14. That all Defendants/Respondents either currently do or did conduct business practices in the State of Texas, Illinois, Ohio, Minnesota and Delaware, among many others. There is complete diversity of citizenship between Plaintiff-Petitioner and Defendants-Respondents.

15. That venue for this action is proper in this District Court pursuant to Texas Code of Civil Procedure because a substantial part of the events giving rise to Plaintiff's petition occurred in this district.

16. That Petitioner seeks an emergency restraining order by which this Court confers jurisdiction over and further seeks to quiet title to Petitioners' real property and the amount in controversy exceeds $75,000.00.

## FACTS COMMON TO ALL ALLEGATIONS

17. Plaintiff incorporates paragraphs 1 through 16 as if fully set forth herein.

18. That Plaintiff/Petitioner's title derives her title from the purchase of the property through CMC LENDING, known to be FHA Case Number 495-9601608-703 and Loan Number 7160001123, purportedly for $238,920.00 in October of 2012. [Attached hereto and made a part hereof as Plaintiff/Petitioner's composite **Exhibit "A"** is a certified copy of the Title and Deed.]

19. That this matter is a proceeding that would seek protections against the unlawful enforcement of Texas Statutes Tex. Civ. Prac. & Rem. Code § 17.042 and Texas Property Code, TITLE 5. SEC. 51.002 as directed against Petitioners' subject property situated within the boundaries of Williamson County, Texas. By virtue of a Note and Mortgage dated November 12, 2012 and Document Number 2011059844, and additionally as Number 2012048688, filed on record in Williamson County, Texas as the following:

> LOT 27, BLOCK J, OF PALOMA LAKE SECTION 3A, A SUBDIVISION IN WILLIAMSON COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT, OF RECORD IN DOCUMENT NUMBER 2011059844, OF WILLIAMSON COUNTY, TEXAS., AS CORRECTED BY AFFIDAVIT RECORDED UNDER DOCUMENT NUMBER 2012048688, OF THE OFFICIAL PUBLIC RECORDS OF WILLIAMSON COUNTY, TEXAS.

20.     That Plaintiff-Petitioner is the owner in Fee Simple, DEED IN TRUST of the above described subject premised real estate.

21.     That Petitioner has actual physical possession of the subject property and has been in possession since 2012.

22.     That Petitioner and her husband, Earl Combs, purchased subject premises as new construction and since that time have done extensive work on the property to maintain structural integrity of the property and secure it from adverse possession and against any hostile environment.

23.     That this petition shall be construed so as to do justice.

24.     That Defendants unlawfully claim rights and title, even at times simultaneously, to subject premises and unlawfully by virtue of certain false and misleading documents and statements have purportedly produced as valid assignments and allonges to further assert their unlawful claims.

25.     That Defendant **US BANK HOME MORTGAGE** alleges to hold mortgage recorded as Document Number 2011059844, and as Number 2012048688 with the Williamson County Recorder. Yet, while purporting to have some validity and appearing on its face valid is actually invalid in that the Defendant never loaned money or allowed credit for the benefit of the Plaintiff-Petitioner.

26.     That the Defendant has refused to acknowledge nor release their unlawful claims for a debt not owed by the Petitioner to Defendants and that Petitioner has submitted countless requests for **VALIDATION OF DEBT** dating back to 2015 of which Defendants admit that they are not the lender, but that CMC Mortgage is the alleged lender. [See   **Exhibit B**- 2015 Escrow Letter from U.S. Bank affirming CMC LENDING as true lender}

27.     That on or about mid to late 2014, Defendant, **CMC LENDING** filed a federal Form 1099-C with the Internal Revenue Service (IRS) and the Securities Exchange Commission (SEC) stating that all debt was discharged and no longer theirs on subject premises.

28. That the Defendant, **MERS**, only as a nominee, never at any time acquired any interest, vested, equitable or otherwise, in said subject premises because they held no authority as would a lender to maintain capacity nor standing as a lender, let alone with a debt allegedly owed to them. Yet, they claim to have once held title to Petitioners' subject premises.

29. That despite the illegality of the act, the Defendant, **MERS**, albeit moot and improper, filed a federal Form 1099-C with the Internal Revenue Service (**IRS**) and the Securities Exchange Commission (**SEC**) on subject premises discharging any known debt on subject premises and additionally allegedly asserts that they properly assigned Note and Mortgage on subject premises to some unknown entity. This is an impossibility as they held no authority to perform such an act.

30. That Defendant, **AQUA FINANCE**, has, according to information and belief, filed for bankruptcy protection and has changed their name more than twice and did file a federal Form 1099-C with the Internal Revenue Service (**IRS**) and the Securities Exchange Commission (**SEC**) on subject premises discharging all debt on subject premises. Additionally, Aqua Finance attempted to assert title on subject premises and undue rights to a debt unknown by Petitioner in their 2013 UCC Financing Statements submitted against the Petitioner in 2013 whereby they show affiliation with Corporation Service Corporation situated at 801 Adlai Stevenson Drive in Springfield Illinois, under a file number 74959043 – 365000. [See   **Exhibit C**- AQUA FINANCE UCC FINANCING STATMENT]

31. That Defendant, **HUD** is aware of all other lender/nominee named Defendants filing federal Form 1099-C and other federal release of debt documents on subject premises discharging all debt on subject premises; Yet they refuse to produce documentation; They did not act and further refused to take the necessary consumer protection steps in protecting title rights for the Petitioner.

32. That Defendant, **FHA** is aware of all other lender/nominee named Defendants filing federal Form 1099-C and other federal release of debt documents on subject premises discharging all debt on subject premises; Yet they refuse to produce documentation; They did not act and further refused to take the consumer protection steps in protecting title rights for the Petitioner.

33. That, by virtue of filing federal Forms 1099-C to the Internal Revenue Service (**IRS**) and the Securities Exchange Commission (**SEC**), among other federal debt release forms, all Defendants knew that any debt or illusory debt allegedly owed by the Petitioner had been cancelled and/or discharged and/or released and that there was a question as to the their title rights in said property.

34. That upon information and belief, Defendant, Cornerstone Mortgage, also **CMC LENDING,** had filed for bankruptcy protection with the federal courts hence causing cloud on title to ensue upon subject premises.

35. That all Defendants have woefully failed to comply with UCC law, Texas Code and federal statutes in regards to Petitioners' innumerous requests for VALIDATION OF DEBT on subject property. See **Exhibit D**- Many Certified Mailings with Tracking Numbers for **VALIDATION OF DEBT** to Defendants}

36. That Defendant, US BANK HOME MORTGAGE, now unlawfully seeks to adversely take possession of Petitioners' primary home by power of sale on March 6, 2018 when it is an absolute uncertainty if they even are true holders in due course of the Note and Mortgage.

37. That Defendant, US BANK HOME MORTGAGE, has repeatedly ignored multiple Qualified Written Requests (QWR) dating back to 2014 and countless Notices of Errors from Petitioner and continue to this date to be non responsive and non-compliant with state and federal laws under RESPA and Regulation X, and Z. That with great delay on December 28, 2017, Defendants new counsel, Barrett Daffin..LLC, finally acknowledged Petitioner's lawful QWR. [See **Exhibit E**- Defendant's Attorney Letter dated 12/28/2017]

38. That Petitioner has, since the early demise of her original lending institution, incessantly demanded for years that Defendants produce the wet ink signature of the original Note and Mortgage, and all properly recorded assignments reflecting who in fact is holder in due course.

39. That Petitioner has been fearful of making a monthly payment to an entity which was not rightfully entitled to a mortgage payment after obtaining an un-impeached certified forensic audit in

December of 2016 revealing Mortgage Fraud upon her Note and Mortgage. {See **Exhibit F-12/2016 Mortgage Fraud Report**} and that Defendants have not and cannot produce any evidence of a valid transfer or equitable interest that states that there was an exchange for "good and valuable consideration" in compliance with Article 9 of the Uniform Commercial Code.

40. That these genuine issues of material fact as to the true holder in due course of Note and Mortgage of Petitioners' subject premises constitutes a cloud on Petitioners' title to her home, and Defendants have unlawfully sought to adversely take possession of subject premise by power of sale on March 6, 2018 when it is an absolute uncertainty if any are true holders in due course of the Note and Mortgage.

41. That this cloud continues to interfere with the Petitioner's unencumbered use and control of her real property and primary residence and Petitioner does additionally rely upon the strict three-year statute of limitations governing adverse possession under title or color of title. *Texas Civil Practice & Remedies Code § 16.024*

42. That with the confusion and errors, acts and inactions done by Defendants, there are or may be persons, other than named Defendants, who may have a claim interest, title right, or lien in fee or lesser estate, vested or contingent, to the subject property and all such persons are further made parties defendant to this complaint by the name and description of "Unknown Owners".

43. That Texas is a non-judicial state as it pertains to power of sale procedures with foreclosures and this court confers jurisdiction to stay the enforcement of a power of sale of the subject property.

44. That Plaintiff-Petitioners urgently seeks that this Honorable court stay the actions of any Williamson county circuit court, state appointed trustee, or US BANK appointed trustee, or ANYONE, who is assigned to unlawfully sell subject premises on the county courthouse steps on March 6, 2018 during the pendency of this matter.

45. That Plaintiff-Petitioner has informed Defendants on multiple occasions in writing of their irrevocable estoppel by acquiescence of right to title or debt owed. [See **Exhibit G**- Irrevocable estoppel by acquiescence Notices last dated 1/31/2018}

46. That Plaintiff-Petitioner has no other adequate remedy at law but to bring this action and that pursuant Texas Finance Code 392.202(b)(2), ..."If a debt collector has failed to respond to your debt validation request, then they have essentially admitted, that the debt in question is inaccurate." This matter then becomes question of law for a court to discern.

47. That Petitioner has fully complied with the regulations set forth for rescission in Texas of any known invalid, void or voidable contracts. This was incepted to set aside all fraud, mistake, or for any other reason to avoid unjust enrichment by the Defendants. *Humphrey v. Camelot Retirement Cmty.*, 893 S.W.2d 55, 59 (Tex.App.-Corpus Christi 1994, no writ); *Country Cupboard, Inc. v. Texstar Corp.*, 570 S.W.2d 70, 73-74 (Tex.Civ.App.-Dallas 1978, writ ref'd n.r.e.). Defendants have thusfar ignored all Petitioners' demands.

48. That Petitioner consistently asserts that the Defendant, US BANK HOME MORTGAGE, HUD, and FHA owed her a duty of good faith and fair dealing and that they breached that duty in February of 2018 by (a) sending a default notice that listed an excessive amount of principal and usurious amount of interest and (b) not responding to her prior requests to clarify the amounts due under the note. Petitioner claims that because these actions were taken in connection with the note rather than the original deed of trust, the good faith standard set forth in Section 1.28 of the Texas Uniform Commercial Code applies.

49. Further, should a substitute trustee conduct a premature foreclosure sale of subject premises, he/she will have violated their duty of fairness and impartiality. As such, when exercising a power in a deed of trust, the trustee becomes a special agent for **BOTH** parties, and he/she must act with absolute impartiality and with fairness to all concerned in conducting a foreclosure.

A trustee's duties are only fulfilled by strictly complying with the exact terms of an alleged deed of trust. In this case, the substitute trustee is not truly certain of all terms of an alleged deed of trust on said premises until this court can rule upon such and hence said substitute trustee risks violating Texas Property Code section 51.002.

50. That Plaintiff has received confirmation from the Consumer Financial Protection Bureau (CFPB) of their current investigation into Plaintiff's complaint, now identified as Complaint number 180202-2829484, as of 2/2/2018, for an unlawful Debt practice by the Defendants.

51. That Plaintiff-Petitioner finally contends that there is genuine issue of material fact as to chain of title to the subject property and this prohibits a foreclosure sale of such real property. *See Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 908 (Tex. 1982).

52. That finally, Plaintiff-Petitioner has suffered significant financial hardships over the past two or more years, which Defendants were full aware because Plaintiff sought a loan modification in early and mid 2017 and yet, just now has finally received documentation dated February 26, 2018 from Defendant-US BANK agent Michelle Collignon, as to pending approval of a loan modification as a compromising alternative to foreclosure sale of subject premises. {See **Exhibit H**- U.S. Bank 2/26/2018 loan modification notification}

53. That the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 prohibit the practice of dual-tracking whereby the lender or servicer forwards the foreclosure process in the midst of negotiating terms of reinstatement.

54. That under this federal law, a mortgage servicer must afford a reasonable amount of time for the borrower to submit a loss mitigation application, and the servicer must submit to the court that the borrower is approved or denied. This is strict law.

55. Further, the servicer is restricted from dual-tracking, which is the prohibitive act of proceeding to a foreclosure sale during the pendency of a loan modification, as is the case in this matter at bar.

56. That in 2010, Congress enacted the Dodd–Frank Wall Street Reform and Consumer Protection Act, which, *inter alia*, granted rule-making authority under the Real Estate Settlement Procedures Act of 1974 (RESPA), 12 U.S.C. § 2601, *et seq.*, to the Consumer Financial Protection Bureau (CFPB). Pub.L. 111–203 (July 10, 2010), 12 U.S.C. §§ 5491, 5511, 5512, 5513; 15 U.S.C. § 1639d. The CFPB subsequently promulgated a rule, effective January 10, 2014, amending Regulation X of RESPA. The rule, which is subsection 1024.41(g) of Regulation X, provides:

> *Prohibitions on foreclosure sale. If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless: (1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option . . . .*

57.     That Plaintiff-Petitioner meets the requisite criteria to be afforded emergency stay provisions of a foreclosure power of sale on subject premises.

58.     That Defendants are subject to the rules and guidelines of the above stated federal Acts and other state statutes as it pertains to this matter at bar, which afford strict protections to the Plaintiff-Petitioner.

59.     That if Defendants are as they assert, as holder of a alleged deed of trust signed by Petitioner, they are further obligated to determine Plaintiff-Petitioner's eligibility for loss mitigation options, including loan modification, and to meet in person before foreclosing its lien in a power of sale on plaintiffs' home on May 6, 2018.

60.     Further, that if such sale were conducted, it would be in violation of 24 C.F.R. §§ 203.64 and 203.605 and that defendant violated certain unidentified guidelines.

61.     That Petitioner has a meritorious right to seek this court's discretion and favorable ruling in obtaining an emergency stay (and/or set aside) the foreclosure sale and further grant her "monetary relief" comparable to damages and loss upon the rights, obligations, and interest of an injured party with regard to the real property, the subject of the foreclosure sale.

62.     That in this matter at bar, justice is otherwise not done should Plaintiff-Petitioner lose her home to an unlawful or premature sale without being allowed all legal recourse afforded her judicially, statutorily and constitutionally to retain her primary residence.

63.     That in summary, should equity and remedy not be provided her, Plaintiff-Petitioner fully intends to challenge the constitutionality of Texas Statutes Tex. Civ. Prac. & Rem. Code § 17.042 and Texas Property Code, TITLE 5. SEC. 51.002 in a proper venue upon sufficient notice of this present cause of action at bar.

## LAW

64.     Plaintiff incorporates paragraphs 1 through 63 as if fully set forth herein.

65.     Plaintiff's consistent anxiety and prolonged stress for years is premised by the more than likely probability of an unperfected chain of title and unrecorded transfers in securitization of her note and mortgage by the named Defendants. Plaintiff-Petitioner, in exercising her fundamental right, has on countless occasions demanded that the defendants produce the original wet ink signed mortgage and promissory note, securitization documentation(s), and each and every intervening agreement between any and all parties to a transfer and securitization process. Such documents are yet to be produced, and Plaintiff does meritoriously seek to quiet title to the subject property.

66.     Rule 8(a)(2) of the Federal Rules of Civil Procedure provides the applicable standard of pleading. It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted). Although a complaint need not contain detailed factual allegations under federal rules, this Complaint at bar does set forth plain and concise statements as to Petitioners cause of action and valid claim.

67.     Under this standard, a complaint must include 'enough facts to state a claim to relief that is plausible on its face.' "Corder v. Lewis Palmer Sch. Dist. No. 38, 566 F.3d 1219, 1223–24 (10th Cir. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable in ference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

68.     Petitioner assuredly surpasses the bar set in Iqbal and Twombly and Defendant can not escape genuine issues of material facts as to their capacity or standing (or lack thereof) to conduct a foreclosure sale on subject premises without the due process of a trial, as afforded by the strict constitutional protections of the Fifth and Fourteenth Amendments. Thus, a court must accept all of the factual allegations in the complaint as true. Twombly, 550 U.S. at 555 & n.3. and also See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

69.     The Fourteenth Amendment guarantees against state denials whereby Congress has adopted remedial measures, such as authorizing persons being denied their civil rights in state courts to remove their cases to federal courts. *Section 3 of the Civil Rights Act of 1866, 14 Stat. 27, 28 U.S.C. § 1443.* See *Virginia v. Rives, 100 U.S. 313, 318 (1880); Strauder v. West Virginia, 100 U.S. 303 (1880).* Further, civil liability is well-settled for a party to bring a cause of action against state officials and agents or persons associated with them who violate protected rights. *42 U.S.C. § 1983.* See *Monroe v. Pape, 365 U.S. 167 (1961);* see also *42 U.S.C. § 1985(3), construed in Griffin v. Breckenridge, 403 U.S. 88 (1971).* Finally, the Reconstruction Congresses did not stop with statutory implementation of rights guaranteed against state infringement, moving as well against private interference for violating citizens constitutional rights. This Plaintiff-Petitioner does derive her rights from the Due Process Clause and other provisions of the Constitution, among other judicial and statutory rights, to pursue this cause of action.

70. Now, Petitioner relies upon The Quiet Title Act, 28 U.S.C. §2409a, which is the "exclusive means by which adverse claimants [may] challenge the United States' title to real property." *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands, 461 U.S. 273, 286 (1983).*

71. As such, 28 U.S. Code § 2409a provides as follows;

> (a) The United <u>States</u> may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United <u>States</u> claims an interest, other than a security interest or water rights. The Quiet Title Act waives the United States' sovereign immunity if a plaintiff establishes that (1) the United States "claims an interest" in the property at issue and (2) title to the property is "disputed."

72. Further, in accordance with Texas Rules of Civil Procedure 29, when a suit against a dissolved corporation, as may be the case in this matter, that suit may be instituted on any claim against said corporation as though the same had not been dissolved, and service of process may be obtained on the president, directors, general manager, trustee, assignee, or other person in charge of the affairs of the corporation at the time it was dissolved, and judgment may be rendered as though the corporation had not been dissolved. This complaint is in full compliance with the *Rules of Civil Procedure* under 3a.

73. Finally, the authority under § 5 of the Fourteenth Amendment is strongest when a state's conduct at issue in a case is alleged to have actually violated a constitutional right. In *United States v. Georgia;* 546 U.S. 151 (2006). In summary, the enforcement of Texas Property Code, TITLE 5. SEC. 51.002 in the premature and unlawful power of sale of subject premises, the sole primary residence of Petitioner, would affirmatively violate her constitutional rights, and would not do justice.

74. In conclusion, a pro se plaintiff, as is the Petitioner at bar, does in fact bear the burden of alleging "enough facts to state a claim to relief that is plausible on its face." The Plaintiff-Petitioner here does file her Pro Se Complaint which must be viewed in a light most favorable to the Pro Se Litigant as the Pro Se Litigant is not held to the same standards as a learned Attorney Counselor long schooled in the art and practice of the Law.

75. Courts have found that the complaint must be viewed most favorably to the Plaintiff(s) are presumed right until proven in Court wrong and unless it is so obviously spurious or so totally defective s to be moot the case must be heard. *See Conley v. Gibson 355 U.S. 41 at 46-47 (1957 case). Also see Hughs v. Rowe 449 U.S. 5 at 10 and U.S. v. Gaubert 113 L.,Ed. 2nd 335 (1991 case). In McGuckin V. Smith et al 947 F2d 1050 (1992 case)* Additionally, the Court must provide a Pro Se Litigant an opportunity to amend their complaint and or fix any errors prior to any dismissal.

76. Plaintiff-Petitioner shall appear in this action in "Propria Persona" and asks that her filings, pleadings, and possible appeals be liberally construed and interpreted and that her submittals to the Court not be held to the same standard as would submittals of an attorney at law. *Pickering v. Pennsylvania Railroad Co. 151 F. 2d240 (3d Cir.1945). Haines v. Kerner 404 US, 519 (1972)*

77. This Petitioner does rely upon well-settled law that frowns upon outright dismissal of a complaint under Rule 12(b)(6), which are highly disfavored and rarely granted. *Sosa v. Coleman, 646 F.2d 991, 993 (5th Cir. 1981).* Under such Rule 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996); see also Spivey v. Robertson, 197 F.3d 772, 774 (5th Cir. 1999), cert. denied, 530 U.S. 1229 (2000).*

## CONCLUSION

78. Plaintiff further incorporates paragraphs 1 through 77 as if fully set forth herein.

79. That for the foregoing reasons plainly and concisely set forth in this meritorious petition for Declaratory Relief to Quiet Title on subject premises, Petitioner meets the necessary burden and elements to proceed to trial on sufficient grounds to obtain priority title rights on subject premises and to acquire an emergency stay of any enforcement actions to foreclose and/or sell subject premises on courthouse steps in Williamson county. Texas scheduled for March 6, 2018 or any subsequently scheduled date unknown by at present the Petitioner, but set by a trustee.

**WHEREFORE**, Plaintiff-Petitioner prays for relief as follows:

1. Stay the enforcement actions afforded in Texas Property Code, TITLE 5. SEC. 51.002; that this honorable court issue an Emergency Restraining Order preventing any Williamson county circuit court designee, or state appointed trustee, or US BANK appointed trustee, or ANYONE, to sell, by power of sale, subject premises on the Williamson county courthouse steps on March 6, 2018; Stay the enforcement actions for the pendency of this matter, so as to do justice in this case.

2. The above referenced Defendants be deemed to constitute a cloud on the title of Petitioner real property, referred herein as subject premises;

3. That all Defendant's claims to title be decreed to be illegal and void and ordered to be cancelled of record.

4. Grant Petitioner sufficient time to receive approval or denial in their current pending loan modification application in accordance with federal and state statutes.

      5.      In the alternative, upon proceeding to trial, order Defendants to produce certified and verifiable documentation including wet ink signatures of the Petitioner reflecting she consented to a mutual agreement for a mortgage loan with that entity and further proving their equitable or other interest and right to title or deed on subject premises; and finally

      6.      For such other relief and equity as this Court deems just and proper.

Respectfully submitted,

By _____
Eleisa K. Jordan

**Eleisa K. Jordan**
2005 Santa Barbara Court
Round Rock, Texas 78665
(512) 775-0910

## CERTIFICATE OF SERVICE

I, Eleisa Jordan, Plaintiff pro se, do here by certify that on the 1st Day of March, 2018, a true and correct copy of the foregoing pleading was forwarded to US Bank Home Mortgage REP, the attorney for (Defendant) by ___ (State the manner of delivery - eg. U.S. Mail; Hand Delivery; (Certified Mail)) at the following address: (give address of Attorney for the Defendant).

US Bank Home Mortgage
4801 Frederica St
Owensboro, KY 42301

Dated: 03/01/2018

Signature of Plaintiff